IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MILDRED ANNE DUDLEY, *Individually and on behalf of others similarly situated*, | |
| Plaintiff, | CIVIL NO. |
| v. | |
| REGIONS FINANCIAL CORPORATION and MORGAN KEEGAN & COMPANY, INC. | |
| Defendants. | |

## COMPLAINT

## INTRODUCTION

Named Plaintiff Mildred Anne Dudley, by and through the undersigned counsel, brings this complaint for damages and other relief on behalf of herself and others similarly situated against Defendants and states and alleges as follows:

## PARTIES

1.      Plaintiff Dudley is a resident of Fulton County, Georgia.

2.      Named Plaintiff has consented in writing to be a party to this action pursuant to 29 U.S.C. § 216(b), and, as the case proceeds, it is likely that other

individuals will sign consent forms and join this action.  Attached as Exhibit A is Named Plaintiff's signed consent form.

3.      Defendant Regions Financial Corporation ("Regions") is a foreign corporation doing business in Georgia with its principal office address, as recorded with the Georgia Secretary of State, being 1900 Fifth Avenue North, Birmingham, Alabama 35203.

4.      Defendant Regions may be served with the summons and the complaint in this action by service upon its registered agent, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

5.      Defendant Morgan Keegan & Company, Inc. ("Morgan Keegan") is a foreign corporation doing business in Georgia with its principal office address, as recorded with the Georgia Secretary of State, being 50 N. Front Street, Memphis, Tennessee 38103.

6.      Defendant Morgan Keegan may be served with the summons and the complaint in this civil action by service upon its registered agent, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

## JURISDICTION AND VENUE

7.      Named Plaintiff, on behalf of herself and others similarly situated, brings this collective action against Defendants under the Fair Labor Standards

Act, 29 U.S.C. § 201, *et seq.* ("FLSA") for failure to pay overtime compensation at the proper rate as required by the FLSA, and, therefore, this Court has original jurisdiction over this case based on 28 U.S.C. § 1331.

8.      Under 28 U.S.C. § 1391, venue is proper in the United States District Court for the Northern District of Georgia because a substantial part of the events or omissions giving rise to Plaintiff's claims, as described in this complaint, occurred within the Northern District of Georgia.

9.      Defendant Regions is a member of the S&P 100 Index. With $132 billion in assets, Defendant Regions is one of the nation's largest full-service providers of consumer and commercial banking, trust, securities brokerage, mortgage, and insurance products and services.   Defendant Regions serves customers in 16 states across the South, Midwest, and Texas, and through its subsidiary, Regions Bank, operates approximately 1,800 banking offices and approximately 2,200 ATMs.

10.      Defendant Morgan Keegan is a registered securities broker-dealer under the Securities Exchange Act of 1934 and a wholly-owned subsidiary of Defendant Regions.

11.      Defendant Morgan Keegan provides a broad range of investment services to its clients from over 300 offices in 19 states.

12.     Defendant Morgan Keegan's services include the underwriting, distribution, trading, and brokerage of equity and debt securities, as well as the sale of mutual funds and other investment products.

13.     In addition, Defendant Morgan Keegan provides investment management services to its retail and institutional clients and trust services to its retail clients.

14.     Defendant Regions' primary source of brokerage, investment banking and capital markets, and trust revenue is its subsidiary, Defendant Morgan Keegan.

15.     Therefore, Defendants have been and continue to be engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

16.     Defendants have been and continue to be "employers" engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

17.     Defendant Morgan Keegan was an employer of Named Plaintiff for the purposes of the FLSA.

18.     Defendant Morgan Keegan is a subsidiary of Defendant Regions that is operated and controlled by Regions, or, in the alternative, Defendant Regions

owns a majority of Defendant Morgan Keegan and controls Defendant Morgan Keegan.

19.    Defendant Morgan Keegan advertises itself as "the securities brokerage arm of Regions Financial Corporation" and as Defendant Regions' "investment and securities brokerage, trust and asset management division."

20.    Defendant Regions maintains a branch office in the lobby of the building in which Defendant Morgan Keegan's Atlanta, Georgia office is located, with the address of that building being Two Buckhead Plaza, 3050 Peachtree Road, Atlanta, Georgia 30305.

21.    Defendant Regions has and has had the authority to hire and fire employees of Defendant Morgan Keegan, including but not limited to Named Plaintiff and the other similarly situated class members.

22.    Defendant Regions determines and has determined the rate and/or method of payment of employees of Defendant Morgan Keegan, including Named Plaintiff and the other similarly situated class members.

23.    For example, the pay stubs for the electronic deposits of the Named Plaintiff's pay into her checking account were issued by Defendant Regions.

24.    Defendant Regions maintains and has maintained employment records (such as pay records, time records, benefits records, etc.) for employees of

Defendant Morgan Keegan, including but not limited to Named Plaintiff and the other similarly situated class members.

25.     Therefore, Defendants were joint employers of Named Plaintiff for the purposes of the FLSA.

26.     Further, Defendants were or are joint employers of the other similarly situated class members for the purposes of the FLSA.

27.     During her employment with Defendants, Named Plaintiff was regularly engaged in interstate commerce and/or in the production of goods for commerce.

28.     In 2010, Defendant Morgan Keegan's gross revenues were approximately $1,319,000,000.00.

29.     In 2009, Defendant Morgan Keegan's gross revenues were $1,282,000,000.00.

30.     In 2008, Defendant Morgan Keegan's gross revenues were $1,340,000,000.00.

31.     In 2010, Defendant Region' non-interest income was $3,531,000,000.00.

32.     In 2009, Defendant Regions' non-interest income was $3,755,000,000.00.

33.     In   2008,   Defendant   Regions'   non-interest   income   was $3,073,000,000.00.

34.     Therefore, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00 for the three years prior to the filing of this lawsuit.

## FACTUAL ALLEGATIONS

35.     Named Plaintiff was employed by Defendants from approximately March 19, 2007 to April 29, 2011 as an Administrative Assistant.

36.     Named Plaintiff was paid on a salary basis.

37.     At the time of her termination, Named Plaintiff's annual salary was approximately $60,000.

38.     Named Plaintiff's salary was approximately the same throughout her employment.

39.     Throughout her employment, Named Plaintiff was paid on a semi-monthly basis.

40.     Named Plaintiff's workweek ran from Monday through Sunday.

41.     From her start date until approximately November 2010, Named Plaintiff was not provided with any means of recording her time.

42.    Named Plaintiff's regular schedule was from 9:00 a.m. to 5:30 p.m., Monday through Friday, with 30 minutes for lunch, which totaled 40 scheduled work hours per workweek.

43.    However, Named Plaintiff frequently worked in excess of 40 hours per workweek.

44.    For example, on more than one occasion, Named Plaintiff arrived to work prior to the start of her shift and began working, including but not limited to sending work-related emails. *See, e.g.*, Exhibit B.

45.    As another example, on more than one occasion, Named Plaintiff worked through her lunch period so that she did not receive an uninterrupted 30-minute lunch period.

46.    In fact, for approximately the first two years of her employment, Named Plaintiff would eat lunch at her desk so that she could continue to work.

47.    As another example, Named Plaintiff would frequently work past the end of her shift end-time of 5:30.

48.    As another example, on more than one occasion, Named Plaintiff performed work from home.  For example, the bankers for whom Named Plaintiff worked would call her at home and have Named Plaintiff make travel arrangements for them.  In addition, Named Plaintiff would take expense reports

8

home to make sure they were up to date because she was not allowed sufficient time at the office to do her other work as well as update and prepare expense reports.

49.     As another example, Named Plaintiff frequently ran errands for her supervisors.  For example, Ken Taratus, Managing Director for Defendant Morgan Keegan in its Atlanta office, would frequently have Named Plaintiff run errands for him such as going to the bank or post office and wrapping and sending presents on his behalf.

50.     Prior to approximately the beginning of 2011, Named Plaintiff was never paid overtime for hours she worked in excess of 40 per workweek.

51.     In Fall 2010, Named Plaintiff contacted Jane Pienaar, Director of Human Resources for Defendant Morgan Keegan, which began a series of conversations between Named Plaintiff and Pienaar.

52.     During one of these conversations, Named Plaintiff explained to Pienaar that she had never been paid overtime for hours worked in excess of 40 per workweek.

53.     At that point, Pienaar provided Named Plaintiff, through Heidi Hutchinson, with timesheets to record her time.

54.     Pienaar explained to Named Plaintiff that, beginning in January 2011, all salaried non-exempt employees, such as Named Plaintiff, would be required to record their time worked.

55.     Named Plaintiff began recording her time on the timesheets in approximately November 2010.

56.     For example, for the workweek ending November 14, 2010, Named Plaintiff completed a time sheet in which she recorded 12 hours and 26 minutes worked in excess of 40 for that workweek.  *See* Exhibit C.

57.     Even though Named Plaintiff recorded her hours worked in excess of 40 hours per workweek, she was not paid for all hours worked in excess of 40 hours per workweek.

58.     For example, Named Plaintiff was not paid for the 12 hours and 26 minutes she recorded working in excess of 40 for the workweek ending November 14, 2010.

59.     Sometime prior to January 1, 2011, Pienaar conducted a conference call with Named Plaintiff, Robert Glenn, Heidi Hutchinson, Kathy Duncan, and Kim Staska regarding timekeeping practices.

60.     Robert J. Glenn is Executive Managing Director for Defendant Morgan Keegan in its Atlanta office.

61.     Heidi Hutchinson is First Vice President, Equity Capital Markets for Defendant Morgan Keegan in its Atlanta office.  Since Defendant Morgan Keegan does not have a Human Resources department or professional in its Atlanta office, Hutchinson serves and has served as the de facto Human Resources person for Morgan Keegan's Atlanta office.  For example, Hutchinson is the person who signed Named Plaintiff's separation notice.  *See* Exhibit D.

62.     Kathy Duncan is an Administrative Assistant for Defendant Morgan Keegan in its Atlanta office.

63.     Kim Staska is an Administrative Assistant for Defendant Morgan Keegan in its Atlanta office.

64.     During the conference call, Pienaar explained that all non-exempt employees would be required to complete timesheets as of January 1, 2011.

65.     After the call, Glenn told Named Plaintiff that he blamed her for the new timesheet requirement.

66.     Glenn also told Named Plaintiff that he had warned her "not to go to Memphis" with her concerns.

67.     After Named Plaintiff began recording her hours worked on timesheets, Hutchinson contacted Named Plaintiff and told her that she was only to

record 40 hours worked per workweek regardless of the hours Named Plaintiff actually worked.

68.    Named Plaintiff, however, continued to record her actual hours worked.

69.    Approximately one month prior to her being terminated, Taratus spoke with Named Plaintiff and informed her Pienaar had told Glenn that he could now terminate Named Plaintiff.

70.    On April 29, 2011, Glenn called Named Plaintiff into a boardroom, disrupting a scheduled meeting Named Plaintiff was having with Ken Taratus and clients.

71.    Hutchinson was present for the meeting, and told Named Plaintiff that she was terminated.

72.    Hutchinson provided Named Plaintiff with a Separation Agreement and General Release ("Release") to be signed in exchange for a severance package.

73.    The Release stated, in relevant part, that Named Plaintiff would "represent, warrant and agree that upon payment of [her] final paycheck, [she had] been paid all compensation due and owing to [her] by Morgan Keegan in connection with [her] employment by the firm and that [she had] no claims for unpaid wages, bonus or other compensation against Morgan Keegan."

74.     After the meeting, Named Plaintiff returned to her desk, at which point Glenn approached her and asked whether she had signed the Release.

75.     When Named Plaintiff stated that she had not signed the Release because she wanted to review the Release and consider it, Glenn told her that she needed to go ahead and sign the release because there was a time limit for signing it.

76.     Though required by Georgia law to provide a Separation Notice to Named Plaintiff at the time of separation, Defendant Morgan Keegan did not provide a separation notice to Named Plaintiff until May 25, 2011, which was almost a month after her separation and only after Defendant Morgan Keegan had been contacted by Named Plaintiff's counsel.

77.     The separation notice states that the purported reason for separation was the following:  "Employee was repeatedly instructed that she and the other support staff were a team that must work together to ensure the telephones were answered, mail was distributed, and other office functions carried out on a shared basis.  Employee was regularly inconsistent in her attendance, talked on her personal cell phone, and was absent from her desk without informing anyone of her whereabouts. When asked to do office tasks, she was often sarcastic and rude to her coworkers." *See* Exhibit D.

78.     However, Named Plaintiff was never written up or otherwise disciplined for any of the reasons stated in the separation notice.

79.     Thus, the reasons for Named Plaintiff's termination that were given in the untimely separation notice were pretextual.

80.     Named Plaintiff was actually terminated for reporting that she was not being paid overtime for all hours worked in excess of 40 per workweek.

81.     After her termination, an Administrative Assistant who is currently employed at Morgan Keegan, Jennifer Paine, contacted Named Plaintiff and told Named Plaintiff that she (Paine) was not recording her time.

82.     Another Administrative Assistant, Maya Speights, also told Named Plaintiff that she (Speights) was not recording her time.

83.     Thus, on information and belief, Named Plaintiff and the Executive Assistants with whom she was working (i.e., Duncan and Staska) were the only Administrative Assistants who were provided with timesheets, and they were provided with timesheets only after Named Plaintiff made a verbal complaint to Pienaar regarding the fact that she was not being paid overtime for hours worked in excess of 40 per workweek.

## COUNT I

### DEFENDANTS' WILLFUL FAILURE TO PAY OVERTIME FOR HOURS WORKED IN EXCESS OF 40 PER WORKWEEK

84.     Named Plaintiff brings this claim on behalf of herself and other similarly situated individuals who have been employed by Defendants as Administrative Assistants (or those holding similar job titles and performing similar duties as Named Plaintiff) in offices of Defendant Morgan Keegan in the three years prior to the filing of this lawsuit and continuing through the duration of this action who have worked more than 40 hours in a workweek but not been paid the overtime premium for all of those hours worked as required by the FLSA ("Similarly Situated Administrative Assistants").

85.     Defendants had a policy and practice of not recording the actual hours worked by Named Plaintiff and the other Similarly Situated Administrative Assistants.

86.     Thus, Defendants failed to maintain accurate records of Named Plaintiff's actual hours worked.

87.     Further, Defendants failed to maintain accurate records of the other Similarly Situated Administrative Assistants' actual hours worked.

88.     Therefore, Defendants failed to comply with the record-keeping requirements of the FLSA.

89.     Defendants had a policy and practice of suffering or permitting Named Plaintiff and the other Similarly Situated Administrative Assistants to perform compensable work off the clock, including work performed before their shifts, after their shifts, during their meal breaks, on the weekends, and/or at home.

90.     Named Plaintiff's and the other Similarly Situated Administrative Assistants' off-the-clock work frequently resulted in them working more than 40 hours in a workweek.

91.     However, Defendants failed to pay overtime wages to Named Plaintiff and the other Similarly Situated Administrative Assistants for all hours worked in excess of 40 hours in a workweek at the appropriate overtime rate as required by the FLSA and its implementing regulations.

92.     Defendants' failure to pay proper overtime wages for each hour worked over 40 per workweek was intentional and willful within the meaning of 29 § U.S.C. 255.

93.     Named Plaintiff and the other Similarly Situated Administrative Assistants did not and do not meet the requirements for any exemption from the requirements of the FLSA.

94.     For example, Named Plaintiff and the other Similarly Situated Administrative Assistants did not and do not supervise any employees.

95.     Further, in performing their primary duties, Named Plaintiff and the other Similarly Situated Executive Assistants did not and do not exercise discretion and independent judgment with respect to matters of significance.

96.     In addition, Named Plaintiff's and the other Similarly Situated Administrative Assistants are classified as non-exempt employees by the Defendants.  *See, e.g.*, Exhibit E, which is a representative pay stub of Named Plaintiff that indicates that her "Pay Type" is "Non Exempt Salaried."

97.     Named Plaintiff and the other Similarly Situated Administrative Assistants are entitled to recover all unpaid overtime wages from Defendants that were secured by the FLSA as well as an equal amount in liquidated damages.

98.     Named Plaintiff and the other Similarly Situated Administrative Assistants are also entitled to attorneys' fees and costs incurred in connection with this claim.

## COUNT II

## WILLFUL FAILURE TO PROMPTLY PAY OVERTIME AS REQUIRED BY THE FLSA

99.     Named Plaintiff brings this claim on behalf of herself and other similarly situated individuals who have been employed by Defendants in salaried non-exempt positions in the offices of Defendant Morgan Keegan and paid overtime in the three years prior to the filing of this lawsuit and continuing through

the duration of this action who were paid for some overtime pursuant to Defendant Morgan Keegan's policy of paying overtime "in arrears", as that policy is described in Paragraphs 100 though 102 ("Similarly Situated Salaried Non-Exempt Employees").

100.   For those limited instances where Defendants actually paid Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees for some of their hours worked in excess of 40 per workweek, Defendants have and have had a policy and practice of paying Named Plaintiff and the other Similarly Situated Non-Exempt Employees their overtime pay "in arrears."  *See* Exhibit F, which is a true and correct copy of Defendants' Arrears Pay Schedule For Overtime For Salaried, Non-Exempt Employees ("Pay Schedule").

101.   For example, as the Pay Schedule demonstrates, for any hours Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees worked up to and including 40 in a workweek between the 1st day of the month through the 15th day of the month, they were paid "up to date" for those hours on the 15th day of that same month.

102.   However, for any overtime Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees worked between the 1st day of the month through the 15th day of the month, they were not paid their overtime (when

they were even paid at all) until the end of the month, or approximately two weeks after their regular payday.

103.   The FLSA requires the prompt payment of overtime.

104.   By failing to pay overtime to Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees on their regular paydays, Defendants violated the prompt payment requirement of the FLSA.

105.   Therefore Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees are entitled to recover an amount equal to the actual overtime paid to them as liquidated damages.

106.   Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees are also entitled to attorneys' fees and costs incurred in connection with this claim.

## COUNT III

## RETALIATION IN VIOLATION OF THE FLSA

107.   Named Plaintiff brings this claim on behalf of herself.

108.   Defendants do not have a formal reporting mechanism in place for registering complaints and concerns regarding wage and hour related issues.

109.   Named Plaintiff repeatedly made verbal reports to Pienaar and Glenn regarding the fact that she had not been paid for all hours worked in excess of 40 per workweek.

110.   For example, at one point, when Pienaar explained that Named Plaintiff would be required to record her time as of January 1, 2011, and would purportedly be paid for hours worked in excess of 40 per workweek, Named Plaintiff specifically complained that she had not been paid for hours worked in excess of 40 per workweek previously and asked whether she would be paid for the previously worked overtime.

111.   Pienaar indicated to Named Plaintiff that she would not be paid for any previously worked overtime.

112.   Named Plaintiff's verbal reports were protected activities under the FLSA.

113.   As punishment and retribution for engaging in statutorily protected conduct, Named Plaintiff suffered repeated adverse employment actions, culminating in the termination of Named Plaintiff's employment on April 29, 2011.

114.   The adverse employment actions suffered by Named Plaintiff were aimed at dissuading Named Plaintiff and other employees from engaging in statutorily protected expressions.

115.   The adverse employment actions suffered by Named Plaintiff were directly and proximately causally related to Named Plaintiff's protected expressions, as evidenced by, among other things, the temporal proximity between Named Plaintiff's engaging in the protected expressions and the retaliatory actions.

116.   Because Defendant Regions and Defendant Morgan Keegan had immediate or successively higher authority over Named Plaintiff, both Defendants are responsible under the law for the retaliation suffered by Named Plaintiff.

117.   As a direct and proximate result of Defendants' retaliation against Named Plaintiff for engaging in statutorily protected opposition to Defendants' wage and hour policies and practices that violated the FLSA, Plaintiff has suffered and will continue to suffer loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, and other damages, and, therefore, Plaintiff is entitled to recover these damages from Defendants in an amount to be determined by a jury.

118.   Defendants retaliated against Named Plaintiff for engaging in statutorily protected opposition to Defendants' wage and hour policies and

practices with reckless disregard or deliberate disregard for the rights and safety of Plaintiff.   As a result, Named Plaintiff is entitled to punitive damages against Defendants in an amount to be determined by a jury.

119.   Named Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim.

## PRAYER FOR RELIEF

Based on the allegations set forth in this complaint and the evidence as it is developed in this case, Named Plaintiff respectfully prays that:

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action as to Count I and Count II in this complaint;

- the Court enter judgment against Defendants that their violations of the FLSA were willful;

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action as to Count I and award them their unpaid back wages as requested in Count I;

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action as to Count I

and award them an amount equal to their unpaid wages as liquidated damages as provided for under the FLSA as requested in Count I;

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into this action as to Count II and award them as liquidated damages an amount equal to their overtime wages that were paid late in violation of the FLSA as requested in Count II;

- the Court enter judgment in favor of Named Plaintiff and all others similarly situated who opt into Count I or Count II of this action and award them all costs and attorney's fees incurred in prosecuting these claims as provided for under the FLSA;

- the Court enter judgment in favor of Named Plaintiff as to Count III in this complaint and award her the damages requested in Count III;

- the Court grant Named Plaintiff and all others similarly situated who opt into this action all other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Named Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury.

Dated:  August 15, 2011

Respectfully submitted,

s/G. Blake Andrews
Gary Blaylock "Blake" Andrews, Jr.
Georgia Bar No. 019375
Blake Andrews Law Firm, LLC
2221 Peachtree Road NE Suite X5
Atlanta, GA 30309
Tel: 770-828-6225
Fax: 866-828-6882
blake@blakeandrewslaw.com


s/S. Renee Huskey
S. Renee Huskey
Georgia Bar No. 380145
Ichter Thomas, LLC
3340 Peachtree Road, NE,  Suite 1530
Atlanta, Georgia 30326-1084
Tel: 404-869-7600
Fax: 404-869-7610
Direct:  404-869-5242
email:  rhuskey@ichterthomas.com