IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MILDRED ANNE DUDLEY,
*Individually and on behalf of others
similarly situated*,

               Plaintiff,

v.

REGIONS FINANCIAL
CORPORATION and MORGAN
KEEGAN & COMPANY, INC.

               Defendants.

CIVIL NO. 1:11-cv-02700-RLV

## PLAINTIFF'S INITIAL DISCLOSURES

**INITIAL DISCLOSURE (1):**

State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.

**RESPONSE:**

**A.   Classification of the Cause of Action**

Named Plaintiff brings this action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") for failure to properly pay overtime as required by the FLSA.   Named Plaintiff alleges Counts I and II on

behalf of herself and others similarly situated and seeks to have those claims certified as a collective action.   In Count III, Named Plaintiff alleges a claim against Defendants for retaliation in violation of the FLSA.

### B.    Factual Outline

Plaintiff was employed by Defendants from approximately March 19, 2007 to April 29, 2011 as an Administrative Assistant.   From her start date until approximately November 2010, Named Plaintiff was not provided with any means of recording her time.   Named Plaintiff's regular schedule was from 9:00 a.m. to 5:30 p.m., Monday through Friday, with 30 minutes for lunch, which totaled 40 scheduled work hours per workweek.   However, Named Plaintiff frequently worked in excess of 40 hours per workweek.

For example, on more than one occasion, Named Plaintiff arrived to work prior to the start of her shift and began working, including but not limited to sending work-related emails.   As another example, on more than one occasion, Named Plaintiff worked through her lunch period so that she did not receive an uninterrupted 30-minute lunch period.   In fact, for approximately the first two years of her employment, Named Plaintiff would eat lunch at her desk so that she could continue to work.   As another example, Named Plaintiff would frequently work past the end of her shift end-time of 5:30.

As another example, on more than one occasion, Named Plaintiff performed work from home.  For example, the bankers for whom Named Plaintiff worked would call her at home and have Named Plaintiff make travel arrangements for them.  In addition, Named Plaintiff would take expense reports home to make sure they were up to date because she was not allowed sufficient time at the office to do her other work as well as update and prepare expense reports.

As another example, Named Plaintiff frequently ran errands for her supervisors.  For example, Ken Taratus, Managing Director for Defendant Morgan Keegan in its Atlanta office, would frequently have Named Plaintiff run errands for him such as going to the bank or post office and wrapping and sending presents on his behalf.

Prior to approximately the beginning of 2011, Named Plaintiff was never paid overtime for hours she worked in excess of 40 per workweek.  Further, Defendants had a policy and practice of suffering or permitting Named Plaintiff and the other Similarly Situated Administrative Assistants to perform compensable work off the clock, including work performed before their shifts, after their shifts, during their meal breaks, on the weekends, and/or at home.  Named Plaintiff's and the other Similarly Situated Administrative Assistants' off-the-clock work frequently resulted in them working more than 40 hours in a workweek.  However,

Defendants failed to pay overtime wages to Named Plaintiff and the other Similarly Situated Administrative Assistants for all hours worked in excess of 40 hours in a workweek at the appropriate overtime rate as required by the FLSA and its implementing regulations. In addition, for those limited instances where Defendants actually paid Named Plaintiff and the other Similarly Situated Salaried Non-Exempt Employees for some of their hours worked in excess of 40 per workweek, Defendants have and have had a policy and practice of paying Named Plaintiff and the other Similarly Situated Non-Exempt Employees their overtime pay "in arrears, " which is in violation of the prompt payment requirement of the FLSA.

In Fall 2010, Named Plaintiff contacted Jane Pienaar, Director of Human Resources for Defendant Morgan Keegan, which began a series of conversations between Named Plaintiff and Pienaar. During one of these conversations, Named Plaintiff explained to Pienaar that she had never been paid overtime for hours worked in excess of 40 per workweek. At that point, Pienaar provided Named Plaintiff, through Heidi Hutchinson, with timesheets to record her time.

Pienaar explained to Named Plaintiff that, beginning in January 2011, all salaried non-exempt employees, such as Named Plaintiff, would be required to record their time worked. Named Plaintiff began recording her time on the

timesheets in approximately November 2010. For example, for the workweek ending November 14, 2010, Named Plaintiff completed a time sheet in which she recorded 12 hours and 26 minutes worked in excess of 40 for that workweek. Even though Named Plaintiff recorded her hours worked in excess of 40 hours per workweek, she was not paid for all hours worked in excess of 40 hours per workweek. For example, Named Plaintiff was not paid for the 12 hours and 26 minutes she recorded working in excess of 40 for the workweek ending November 14, 2010.

Sometime prior to January 1, 2011, Pienaar conducted a conference call with Named Plaintiff, Robert Glenn, Heidi Hutchinson, Kathy Duncan, and Kim Staska regarding timekeeping practices. Robert J. Glenn is Executive Managing Director for Defendant Morgan Keegan in its Atlanta office. Heidi Hutchinson is First Vice President, Equity Capital Markets for Defendant Morgan Keegan in its Atlanta office. Since Defendant Morgan Keegan does not have a Human Resources department or professional in its Atlanta office, Hutchinson serves and has served as the de facto Human Resources person for Morgan Keegan's Atlanta office. For example, Hutchinson is the person who signed Named Plaintiff's separation notice. Kathy Duncan is an Administrative Assistant for Defendant Morgan Keegan in its Atlanta office. Kim Staska is an Administrative Assistant for Defendant Morgan

Keegan in its Atlanta office.  During the conference call, Pienaar explained that all non-exempt employees would be required to complete timesheets as of January 1, 2011.

After the call, Glenn told Named Plaintiff that he blamed her for the new timesheet requirement.  Glenn also told Named Plaintiff that he had warned her "not to go to Memphis" with her concerns.  After Named Plaintiff began recording her hours worked on timesheets, Hutchinson contacted Named Plaintiff and told her that she was only to record 40 hours worked per workweek regardless of the hours Named Plaintiff actually worked.  Named Plaintiff, however, continued to record her actual hours worked.

Approximately one month prior to her being terminated, Taratus spoke with Named Plaintiff and informed her Pienaar had told Glenn that he could now terminate Named Plaintiff.   On April 29, 2011, Glenn called Named Plaintiff into a boardroom, disrupting a scheduled meeting Named Plaintiff was having with Ken Taratus and clients.  Hutchinson was present for the meeting, and told Named Plaintiff that she was terminated.  Hutchinson provided Named Plaintiff with a Separation Agreement and General Release ("Release") to be signed in exchange for a severance package.

The Release stated, in relevant part, that Named Plaintiff would "represent,

6

warrant and agree that upon payment of [her] final paycheck, [she had] been paid all compensation due and owing to [her] by Morgan Keegan in connection with [her] employment by the firm and that [she had] no claims for unpaid wages, bonus or other compensation against Morgan Keegan."   After the meeting, Named Plaintiff returned to her desk, at which point Glenn approached her and asked whether she had signed the Release.  When Named Plaintiff stated that she had not signed the Release because she wanted to review the Release and consider it, Glenn told her that she needed to go ahead and sign the release because there was a time limit for signing it.

Though required by Georgia law to provide a Separation Notice to Named Plaintiff at the time of separation, Defendant Morgan Keegan did not provide a separation notice to Named Plaintiff until May 25, 2011, which was almost a month after her separation and only after Defendant Morgan Keegan had been contacted by Named Plaintiff's counsel.

The separation notice states that the purported reason for separation was the following:  "Employee was repeatedly instructed that she and the other support staff were a team that must work together to ensure the telephones were answered, mail was distributed, and other office functions carried out on a shared basis. Employee was regularly inconsistent in her attendance, talked on her personal cell

phone, and was absent from her desk without informing anyone of her whereabouts.  When asked to do office tasks, she was often sarcastic and rude to her coworkers."  However, Named Plaintiff was never written up or otherwise disciplined for any of the reasons stated in the separation notice.  Thus, the reasons for Named Plaintiff's termination that were given in the untimely separation notice were pretextual.  Named Plaintiff was actually terminated for reporting that she was not being paid overtime for all hours worked in excess of 40 per workweek.

After her termination, an Administrative Assistant who is currently employed at Morgan Keegan, Jennifer Paine, contacted Named Plaintiff and told Named Plaintiff that she (Paine) was not recording her time.   Another Administrative Assistant, Maya Speights, also told Named Plaintiff that she (Speights) was not recording her time.  Thus, on information and belief, Named Plaintiff and the Executive Assistants with whom she was working (i.e., Duncan and Staska) were the only Administrative Assistants who were provided with timesheets, and they were provided with timesheets only after Named Plaintiff made a verbal complaint to Pienaar regarding the fact that she was not being paid overtime for hours worked in excess of 40 per workweek.

C.   **Legal Issues**

(1)   Whether Defendants can prove that Plaintiff's claims and/or the

claims of any individual who opts in to this case are barred, in whole or in part, by the applicable statute of limitations.

(2)      Whether Defendants can prove that any individual who opts in to this case was exempt from the FLSA's overtime requirements.

(3)      Whether Defendants failed to maintain accurate records of Named Plaintiff's actual hours worked.

(4)      Whether Defendants failed to maintain accurate records of the actual hours worked for any individual who opts in to this case.

(5)      Whether Plaintiff or any individual who opts in to this case can prove by a preponderance of the evidence that they were not properly paid for all hours worked with Morgan Keegan during the relevant period.

(6)      Whether, in the event that Plaintiff or any individual who opts in to this can prove that they were not properly paid for all hours worked in excess of 40 per workweek, Defendants can prove that such amounts were de minimis within the meaning of the provisions of the Portal-to-Portal Act.

(7)      Whether, in the event it is found that either Defendant violated the FLSA, Plaintiff can prove such violation was "willful" under 29 U.S.C. § 255(a).

(8)      Whether Plaintiff is entitled to proceed on a collective action basis

with respect to her overtime claims.

(9)   Whether Defendants can prove that Plaintiff's claims or the claims of any individual who opts in to this case are barred by the doctrines of payment, estoppel, accord and satisfaction, and/or release.

(10)   Whether, in the event a violation of the FLSA did occur, Defendants can demonstrate that the act or omission giving rise to the violation was done in good faith and that they had reasonable grounds for believing that the act or omission was not a violation of the FLSA.

(11)   Whether Plaintiff or any individual who opts in to this case can prove they are entitled to unpaid and/or untimely paid overtime and are therefore entitled to recover attorney's fees and litigation costs from either or both Defendants.

(12)   Whether Defendants can prove that Plaintiff or any individual who opts in to this case failed to mitigate or reasonably attempt to mitigate any alleged damages.

(13)  Whether Plaintiff can set forth a prima facie case of retaliation under the FLSA.

(14)   Whether, in the event that Plaintiff can set forth a prima facie case of retaliation under the FLSA, Morgan Keegan can articulate a legitimate, non-

retaliatory reason for its decision to terminate Plaintiff's employment.

(15)   Whether, in the event Morgan Keegan can articulate a legitimate, non-retaliatory reason for its decision to terminate Plaintiff's employment, Plaintiff can prove Morgan Keegan's articulated reason for terminating Plaintiff's employment is pretextual.

(16)   Whether Plaintiff can prove she is entitled to punitive damages.

(17)   Whether Plaintiff can prove Regions was a joint-employer of Plaintiff.

(18)   Whether Defendants can prove that Plaintiff's claims are barred or limited because Defendants at all times acted in good faith with regard to Plaintiff's compensation and/or in conformity with applicable regulations or other relevant Department of Labor materials.

(19)   Whether Defendants can prove facts sufficient to establish any or all of the affirmative defenses that they will plead in their amended answers that have not already been identified as legal issues to be tried.

**INITIAL DISCLOSURE (2):**

Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.

**RESPONSE:**

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), as well as all applicable interpretive Federal Regulations and case law, potentially including but not necessarily limited to the following: *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, Final Rule*, 69 Fed. Reg. 22133; *Ojeda-Sanchez v. Bland Farms, LLC*, 2010 WL 3282984 (S.D. Ga. Aug. 18, 2010); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1265 (11th Cir. 2008) (citing 29 U.S.C. §207(a)(1)); *Barreto v. Davie Marketplace, LLC*, 331 Fed. Appx. 672, 673-74 (11th Cir. 2009) (citing 29 U.S.C. § 213(a)(1) and *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994)); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995); *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997); *Cotten v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1347 (M.D. Fla. 2009) (citing 29 C.F.R. § 541.200(a)); *Rock v. Ray Anthony Intern, Inc.*, 380 Fed. Appx. 875, 879 (11th Cir. 2010) (quoting 29 C.F.R. § 541.202(c)); *Talbott v. Lakeview Center, Inc.*, 2008 WL 4525012 (N.D. Fla. 2008) (citing 29 C.F.R. § 541.300(a)); *Stevins v. Provident Const. Co.*, 137 Fed. Appx. 198 (11th Cir. 2005); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997); *Wright v. Carrigg*, 275

F.2d 448, 449 (4th Cir. 1960); *Friedman v. South Florida Psychiatric Associates, Inc.*, 139 Fed. Appx. 183 (11th Cir. 2005); *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979); *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2nd Circ. 1997); *Rogers v. Savings First Mortgage*, 362 F. Supp. 2d 624, 638 (D. Md. 2005); 29 C.F.R. §516.2(a)(5-9); *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839 (11th Cir. 2009); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688-89, (1946), superseded by statute on other grounds as stated in *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 n. 6 (11th Cir. 2007); *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988)); *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988); *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997); *Templet v. Hard Rock Constr. Co.*, 2003 WL 181363, at*6, (E.D. La. Jan 27, 2003); *Silva v. Miller*, 307 Fed. Appx. 349 (11th Cir. 2009); *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989*); Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007); *Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763 (M.D. Ala. Nov. 23, 2005); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334

(M.D. Fla. 2007); *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004); *Reyes v. AT & T Corp.*, --- F.Supp.2d ----, 2011 WL 3517004 (S.D. Fla. Feb. 28, 2011); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344 (N.D. Ga. 2007); *West v. Mando America Corp.*, 2008 WL 4493422 (M.D. Ala. Oct. 2, 2008); *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006); *Homes v. City of Atlanta, Georgia*, 2010 WL 1328713 (N.D. Ga. Jan. 27, 2010); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Bythewood v. Unisource Worldwide, Inc.*, 413 F. Supp. 2d 1367, 1372-73 (N.D. Ga. 2006); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004); *Poole v. City of Plantation, Fla.*, 2010 WL 1791905 (S.D. Fla. May 5, 2010); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011–12 (11th Cir. 1989); and *see also Debrecht v. Osceola County*, 243 F. Supp. 2d 1364, 1374 (M.D. Fla. 2003).

**INITIAL DISCLOSURE (3):**

Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)

**RESPONSE:**

*See* Attachment A.

(4) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)

**RESPONSE:**

*See* Attachment B.

**INITIAL DISCLOSURE (5):**

Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)

**RESPONSE:**

*See* Attachment C.

**INITIAL DISCLOSURE (6):**

In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)

**RESPONSE:**

*See* Attachment D.

**INITIAL DISCLOSURE (7):**

Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

**RESPONSE:**

Plaintiff is not aware of any applicable insurance agreements at this time.

**INITIAL DISCLOSURE (8):**

Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of action and state the basis and extent of such interest.

**RESPONSE:**

None.

Dated:  November 21, 2011

Respectfully submitted,

s/G. Blake Andrews
Gary Blaylock "Blake" Andrews, Jr.
Georgia Bar No. 019375
Blake Andrews Law Firm, LLC
2221 Peachtree Road NE Suite X5
Atlanta, GA 30309
Tel: 770-828-6225
Fax: 866-828-6882
blake@blakeandrewslaw.com

s/S. Renee Huskey
S. Renee Huskey
Georgia Bar No. 380145
Ichter Thomas, LLC
3340 Peachtree Road, NE,  Suite 1530
Atlanta, Georgia 30326-1084
Tel: 404-869-7600

Fax: 404-869-7610
Direct:  404-869-5242
email:  rhuskey@ichterthomas.com

**ATTACHMENT A**

## I.   Named Plaintiff

Mildred Anne Dudley

Plaintiff may be contacted through her attorneys.

**Subject Matter:**   Factual allegations in support of all of Plaintiff's claims.

## II.   Current Employees of Defendants (contact information is in possession of Defendants)

A.   Ken Taratus, Managing Director, Morgan Keegan (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

B.   Jane Pienaar, Director of Human Resources, Morgan Keegan

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's

claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

C.      Robert  Glenn,  Executive  Managing  Director,  Morgan  Keegan
        (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named

Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

D.     Heidi Hutchinson, First Vice President, Equity Capital Markets, Morgan Keegan (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

E.     Kathy Duncan, Administrative Assistant, Morgan Keegan (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked

in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

F.     Kim Staska, Administrative Assistant, Morgan Keegan (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

G.   Jennifer Paine, Administrative Assistant, Morgan Keegan (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

H.   Maya Speights, Administrative Assistant, Morgan Keegan (Atlanta Office)

**Subject Matter:**   Factual allegations in support of all of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' failure to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Named Plaintiff's

internal complaints that she was not paid overtime for all hours worked in excess of 40 per workweek; Morgan Keegan's timekeeping practices and policies; facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent; and the retaliation against Named Plaintiff.

I.    All Administrative Assistants Employed by Defendants in Offices of Morgan Keegan

**Subject Matter:** Factual allegations in support of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' policy and practice of failing to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Morgan Keegan's timekeeping practices and policies; and facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent.

J.    All Salaried Non-Exempt Individuals Employed by Defendants in Offices of Morgan Keegan

**Subject Matter:** Factual allegations in support of Named Plaintiff's claims, including, but not necessarily limited to: Defendants' policy and

practice of failing to pay Named Plaintiff and other similarly situated employees for all hours worked in excess of 40 per workweek; Defendants' failure to promptly pay overtime to Named Plaintiff and other similarly situated employees; Morgan Keegan's timekeeping practices and policies; and facts demonstrating that Regions was a joint employer of Named Plaintiff and the other similarly situated employees she seeks to represent.

Plaintiff's counsel's investigation is ongoing, and Plaintiff will supplement her initial disclosures with the names of any additional witnesses that Plaintiff identifies.   In addition, Plaintiff reserves the right to rely upon any potential witnesses identified by Defendants in their initial disclosures or in discovery.

**ATTACHMENT B**

Plaintiff has not retained an expert witness for use at trial at the time of filing these Initial Disclosures.   If Plaintiff retains an expert witness, Plaintiff will supplement her initial disclosures.

## ATTACHMENT C

All documents, data compilations, and tangible things in Plaintiff's possession that Plaintiff may use to support her claims that are identified below are in the possession of Plaintiff's counsel and are located at one of the firm's office addresses.

1.   Regions paycheck print outs for Named Plaintiff

2.   Regions FSA information

3.   Regions email from Grayson Hall re: Outstanding Results from 2011 JD Power Study

4.   Regions Voluntary Insurance documents

5.   Regions Code of Conduct and Business Ethics

6.   Performance Reviews

7.   Printed copies of certain work-related emails

8.   Time sheets and PTO related documents

9.   Separation and Settlement Agreement and Release

10.  Benefit package with Morgan Keegan and AML Training Completion

11.  Morgan Keegan Org Chart and related documents

12.  Morgan Keegan Employee Policy Manual

13.  Morgan Keegan benefits packages and welcome books

**ATTACHMENT D**

## Count I:    Failure to Pay Overtime

With regard to her individual claim under Count I, Named Plaintiff is entitled to recover her unpaid overtime in actual damages and an equal amount in liquidated damages. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008) ("Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages."); *see also Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (award of liquidated damages is the "norm" in cases where the FLSA has been violated). The employer "bears the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960). "Subjective good faith means the employer has an honest intention to ascertain what the FLSA requires and to act in accordance with it. Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA." *Friedman v. South Florida Psychiatric Associates, Inc.*, 139 Fed. Appx. 183 (11th Cir. 2005). "'[G]ood faith requires some duty to investigate potential liability

under FLSA.'" *Id.* (quoting *Barcelona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)).

Courts hold employers to a high standard in determining whether good faith and reasonable grounds have been shown. The burden "is a difficult one to meet . . . and [d]ouble damages are the norm, single damages the exception." *Reich v. Southern New England Telecomm. Corp.* 121 F.3d 58, 71 (2d Cir. 1997). "It is not enough to plead and prove ignorance of the wage requirements. Knowledge will be imputed to the offending employer. . . . Nor does the complete ignorance of the possible applicability of the FLSA shield the employer from liability for liquidated damages." *Rogers v. Savings First Mortgage*, 362 F. Supp. 2d 624, 638 (D. Md. 2005).

With regard to the applicable statute of limitations, 29 U.S.C. § 255(a) of the FLSA provides that actions are to be brought within two years after the cause of action "accrued" except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In the Eleventh Circuit, "'[t]o establish that the violation of the [FLSA] was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether

it was.'" *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1283 (11th Cir. 2008) (quoting *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162–1163 (11th Cir. 2008)) (internal quotation marks omitted). Reckless disregard is defined as the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." *Id.* (citing 5 C.F.R. § 551.104).

In this case, Named Plaintiff alleges that she is entitled to liquidated damages.  In addition, Named Plaintiff alleges that Defendants' violation of the FLSA was willful, and, therefore, the three-year statute of limitations applies. Accordingly, below is set forth the calculation of Named Plaintiff's damages for Count I, including both unpaid overtime and liquidated damages, based on the overtime hours she estimates that she worked for Defendants within the three years prior to the filing of her complaint (i.e., since August 15, 2008).

Named Plaintiff was paid an annual salary of $60,000.00, which equals approximately $1153.85 per week ($60,000 / 52 weeks = $1153.85 per week).  At $1153.85 per week, Named Plaintiff's computed hourly rate of pay was $28.85 per hour ($1153.85 per week / 40 hours per week = $28.85 per hour).

Named Plaintiff was employed by Defendants as an Administrative Assistant for approximately 142 weeks during the relevant time period (i.e., from August 15, 2008 through April 29, 2011, which was her date of termination).

During this period, Named Plaintiff generally arrived to work at her scheduled start time and completed her workday in the office between 15 minutes and 30 minutes after her scheduled end time, though sometimes she did not complete her workday until much later. *See, e.g.*, Plaintiff's Complaint, Ex. C.   Plaintiff estimates an average of 2.0 hours "in office" post-shift work per week (which is slightly less than 25 minutes per day).   In addition, Named Plaintiff's job duties frequently required her to perform work after she left the office and at home. *See, e.g.*, Plaintiff's Complaint, ¶¶ 58-59.  Plaintiff estimates that she spent an average of 2.0 hours per workweek on this work.  Lastly, Plaintiff almost always ate at her desk, which amounts to approximately 2.5 hours per workweek.  Thus, Named Plaintiff estimates that she worked an average of 46.5 hours per week, or 6.5 hours of overtime per workweek.

Thus, Named Plaintiff is entitled to $79,889.20 in back pay and liquidated damages for this period of her employment (6.5 hours * $28.85 per hour = $187.53 * 1.5 = $281.30 per week * 142 weeks = $39,944.60 back pay * 2 (liquidated damages) = $79,889.20).

It is our understanding that Defendants did not keep accurate time records for Named Plaintiff's hours worked.  It was Defendants' obligation to keep time and pay records for three years as required by the FLSA.  Without these records,

Defendants cannot refute Named Plaintiff's claims as to the hours she worked.  *See* 29 U.S.C.A. §211(c) and 29 C.F.R. §516.2(a)(5-9).  Case law across jurisdictions is in agreement that employers have a legal obligation to record: the dates of the workweek, the regular hourly rate, the hours worked each day and the weekly total, the straight time wages paid, and the overtime paid. 29 C.F.R. §516.2(a)(5-9). "[W]here an employer has not kept adequate records of its employees' wages and hours, '[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]." *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839 (11th Cir. 2009) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688-89, (1946), superseded by statute on other grounds as stated in *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 n.6 (11th Cir. 2007) and citing *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988)). "Where the employer fails to submit accurate records, to recover, the employee 'need only show he has in fact performed work for which he was improperly compensated and . . . produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (*quoting Brock*, 835 F.2d at 828).  "Upon such showing, the burden 'shifts to the employer to prove its claim or disprove the employee's, and upon failing to do so,

the court can award damages to the employee even if the result is only approximate.'" *Id.* (quoting *Etienne*, 173 F.3d at 1375).  If the employer fails to rebut the inference, the employee is entitled to damages, "even though the result may be only approximate."  *Anderson*, 328 U.S. at 688; *see also Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988) ("The standard under *Anderson v. Mt. Clemens Pottery Co.* does not mandate that a plaintiff prove each hour of work with unerring accuracy or certainty."); *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997) (the employer "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [he] kept records in accordance with the [FLSA]."); *Templet v. Hard Rock Constr. Co.*, 2003 WL 181363, at*6, (E.D. La. Jan. 27, 2003) (holding that the burden for employees is to produce some evidence, and they "may satisfy their burden with admittedly inexact or approximate evidence.")  Thus, since Defendants generally did not maintain any time records, much less accurate time records, Named Plaintiff's reasonable estimates of her hours worked are sufficient for the Court to award the damages she seeks.

### Count II:    Failure to Promptly Pay Overtime

"The FLSA provides that '[e]very employer shall pay to each of his employees . . . who in any work week is engaged in commerce or in the production

of goods for commerce ... not less than the minimum wage rate....'" *Arroyave v. Rossi*, 296 Fed. Appx. 835 (11th Cir. 2008) (quoting 29 U.S.C. § 206(b)). "While the FLSA does not specify when payment of wages must be made, the former Fifth Circuit held that liquidated damages are available under the act to an employee if the employer failed to pay wages or overtime on the regular payment date." *Id.* (citing *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1945)); *see also U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960) (holding that the FLSA requires "prompt" payment of wages); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (holding that liquidated damages available to employees who are not paid when wages are due); *Birbalas v. Cuneo Printing Industries*, 140 F.2d 826, 828 (7th Cir. 1944) (liquidated damages available for overtime wages not paid at payday); *Biggs v. Wilson*, 1 F.3d 1537, 1542-43 (9th Cir. 1993) (wages are late if not paid on payday); and *Seneca Coal & Coke Co. v. Lofton*, 136 F.2d 359, 363 (10th Cir. 1943) (liquidated damages apply where overtime not paid as due in regular course of employment). In addition, 29 CFR 778.106 – "Time of Payment" provides that "[t]here is no requirement in the [FLSA] that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."

In this case, for those limited instances where Defendants actually paid Named Plaintiff for some of her hours worked in excess of 40 per workweek, Defendants had a policy and practice of paying that overtime "in arrears." *See* Plaintiff's Complaint, ¶¶ 100-106.  Under that policy, Named Plaintiff was paid "up to date" for hours worked up to and including 40 hours per workweek, but she was not paid her overtime until approximately two weeks after her regular payday. Therefore, Named Plaintiff is entitled to liquidated damages in an amount equal to all overtime that was paid to her after her regular payday.

According to the pay documents currently in Plaintiff's possession, as of March 15, 2011, Named Plaintiff had been paid $136.64 in overtime.  Under Defendants' "arrears" policy, that overtime was not paid timely, and, therefore, Named Plaintiff is entitled to $136.64 in liquidated damages.  Named Plaintiff reserves the right to supplement this response if discovery shows that she had additional overtime that was not paid promptly.

### Count III: Retaliation in Violation of the FLSA

The FLSA prohibits retaliation against an employee who files an FLSA complaint or otherwise engages in protected conduct.  *See* 29 U.S.C. § 215(a) (3). Further, an oral complaint of an FLSA violation may constitute protected conduct. *See Kasten v. Saint–Gobain Performance Plastics Corp.*, --- U.S. ---, 131 S. Ct.

1325 (2011).  In Count III, Plaintiff alleges she was retaliated against for reporting to Morgan Keegan that she was not being paid for all hours worked in excess of 40 per workweek.  *See* Plaintiff's Complaint, ¶¶ 107-116.  Plaintiff is seeking damages for the loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment and other compensatory damages.  *See* Plaintiff's Complaint, ¶ 117.  Plaintiff is also seeking punitive damages.  *See* Plaintiff's Complaint, ¶ 118.[1]

### A. Loss of Past and Future Income and Employee Benefits and Other Damages (i.e., Liquidated Damages)

With regard to the loss of past and future income and employee benefits, Named Plaintiff is requesting $36,000.00 in loss of past income for the period between her date of termination and October 10, 2011, which is the date she began her new job.  She is also seeking an equal amount in liquidated damages in the amount of $36,000.00 as provided under 29 U.S.C. § 215(a)(3).

---

[1] Named Plaintiff acknowledges that there is binding Eleventh Circuit authority holding that punitive damages are not available in a claim for retaliation under the FLSA.  *See Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000). However, there is a split amongst the Circuits as to whether punitive damages are available in such a claim.  *See Wolfe v. Clear Title, LLC*, 654 F. Supp. 2d 929 E.D. Ark. 2009) (discussing the split and holding that punitive damages are available); *see also Allen v. Garden City Co-op, Inc.*, 651 F. Supp. 2d 1249 (D. Kan. 2009) (discussing the split and holding that punitive damages are not available).  Based on the split in the Circuits, Named Plaintiff raises the issue of punitive damages in good faith and to preserve it for further review.

In her new job, Named Plaintiff is earning approximately $20,000.00 less per year, or approximately $384.62 per week, than when she was employed by Defendants. Therefore, as of the date of the service of these initial disclosures, Named Plaintiff has incurred approximately $2,307.72 (6 weeks * $384.62) in lost wages since the date she began her new job. She is also seeking an equal amount in liquidated damages in the amount of $2,307.72 as provided under 29 U.S.C. § 215(a)(3). Her lost past wages will continue to accrue at the rate of $384.62 per week plus an equal amount in liquidated damages.

In addition, based on the egregious nature of the retaliation she suffered, Named Plaintiff will seek lost future income at the rate of $20,000.00 per year plus an equal amount in liquidated damages. At this early point in her new job and in this litigation, Named Plaintiff intends to request future pay for 10 years, or $200,000.00 plus an equal amount in liquidated damages.

### B. Mental Anguish, Emotional Distress, Humiliation, and Embarrassment

It is not counsel's practice to ask the jury for a set financial award for intangible damages such as emotional distress. Instead, it is counsel's practice to ask the jury to award an amount of money for emotional pain and suffering that will fairly compensate Plaintiff for the mental pain and suffering endured as a result of the unlawful retaliation of the Defendants. Counsel is asking for the

maximum amount allowed by law.  Plaintiff further notes the controlling law in his

Circuit:

> There is no exact yardstick by which recovery [for mental pain and suffering] is to be measured and the solving of the difficulty in determining the amount of the award is left to the discretion of the jury unless clearly arbitrary or so great as to be shocking to the judicial conscience or indicate that the jury was influenced by prejudice or passion.

> *Georgia Southern & Florida Railway Co. v. Perry*, 326 F.2d 921, 926 (5th

Cir. 1964).  This rule cannot be reconciled with the notion that a Plaintiff is in any

better position than a jury to state with certainty an amount representing the correct

compensation for emotional distress damages.

Plaintiff notes that the Pattern Jury Instructions (Civil) of the Eleventh

Circuit repeat the following paragraph multiple times:

> On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury -- tangible and intangible. Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate the Plaintiff for those claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

There are additionally a number of more recent cases after the nationwide

adoption of the mandatory disclosures of Rule 26 that are even more explicit in

holding that for a person like Named Plaintiff, emotional distress does not have to

be quantified in Rule 26 disclosures.  *See, e.g., Williams v. Trader Publishing Co.*, 218 F.3d 481, 486-487 and n.3 (5th Cir. 2000) (holding that compensatory damages for emotional distress . . . may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)); *Burrell v. Crown Central Petroleum, Inc.*, 177 F. R. D. 376, 386 (E.D. Tex. 1997) (holding that the computation of metal anguish damages is unnecessary under Rule 26(a)(1)(C)); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (holding that the plaintiffs' objection on the basis that their non-economic compensatory damages are not readily subject to computation under Rule 26 is sustained).

Named Plaintiff submits that the decision how much to award for these damages belongs to the jury and to the jury alone.  Named Plaintiff further submits that on a practical level, a forced statement of emotional pain and suffering damages, as here, is pernicious.  Appearing as it must in a court paper, it is subject to Rule 11 and, therefore, in light of the above authorities and common sense, the number given is necessarily not based on any specific calculation or formula.

### Attorney's Fees

Lastly, under the FLSA, Named Plaintiff is entitled to her attorney's fees and costs in addition to her unpaid overtime, liquidated damages, and the damages she seeks in connection with her retaliation claim.  *See Silva v. Miller*, 307 Fed.

Appx. 349 (11th Cir. 2009). The FLSA provides that a court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (emphasis added). In contrast to other fee-shifting statutes where the award of attorney's fees and costs is discretionary with the court, an award of attorney's fees to a prevailing plaintiff in an FLSA case is mandatory. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983). Named Plaintiff has incurred significant attorney's fees to date, and she continues and will continue to incur additional attorney's fees as this case progresses.